IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | | |
|---|---|---|---|---|
| ESTATE OF JEFFREY ROLISON PLAINTIFF, | : | | | |
| | : | | | |
| | : | NO.: | **1 6** | **4 4 0 1** |
| vs. | : | | | |
| | : | | | |
| PROCTOR & GAMBLE COMPANY | : | | | |
| MARGARET M. LOSINGER | : | | | |
| DEFENDANTS, | : | | | |
| | : | | | |

**VERIFIED COMPLAINT**
(Injunctive Relief Requested)

The Estate of Jeffrey L. Rolison, administered by his brothers, Brian and Richard

Rolison, brings this Complaint against Proctor & Gamble Company ("P & G"), Decedent's

employer, for breach of its fiduciary duties under ERISA, and against Margaret M. Losinger, a

woman whom P & G irresponsibly proffers as its employee's designated beneficiary entitled to

his employee investment accounts. The Estate challenges this determination as unfounded and

irresponsible--P & G has defaulted to a 29-year old document naming a girlfriend the Decedent

acrimoniously broke up with 27 years ago.  It does so because it lost its employees' paper

documentation and online account digital data in a change of plan administrators taking place in

the Fall of 2015.  The Decedent died suddenly shortly thereafter, on December 14, 2015, not

realizing or having the opportunity to reinstate his online account elections.   Decedent was

demonstrably responsible in managing his accounts with P & G and would not have slept for 27

years on a beneficiary election benefitting a despised ex-girlfriend and disenfranchising those he

held in his affections.

P & G, by its retirement program representatives, has refused to cooperate in Plaintiff's

investigation of this matter and has forced Plaintiff to pursue providing documentation honor Plaintiff's request for current investment plans materials and improperly acted to resolve the relevant investment plan accounts in favor of Defendant Losinger in order to avoid exposure for its data loss and other fiduciary breaches.

Plaintiff first seeks injunctive relief to prevent Defendant P & G from making a distribution of Decedent's investment plan accounts to Defendant Losinger and to allow for a responsible and full investigation and determination of the true beneficiary.    It has threatened to make such distribution after August 16, 2016 absent the injunctive relief sought.  Defendant Losinger's interest, if any, would be determined in this litigation.  Plaintiff additionally seeks to hold P & G accountable for its breaches of fiduciary duty in its handling of the Decedent's investment accounts, and by extension, other similarly situated employees.

Plaintiff further avers as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction for this civil action arises under 28 U.S.C. § 1331  as a matter involving federal questions centered on 29 U.S.C. §1132(a).

2.  This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) as the acts and omissions complained of occurred in this District and under and 28 U.S.C. §1391(b) as all Defendants may be found within it.

3.      Pendant jurisdiction arises over state law causes of action.

## PARTIES

4.      Plaintiff is an Estate domiciled, as are its Administrators, in Pennsylvania.

5.      The corporate Defendant is a corporation under the laws of the State of Ohio and carries out business, among other places, in Pennsylvania at a facility located in Mehoopany Township,

2

Wyoming County, Pennsylvania at Route 87 S, Mehoopany, PA 18629.

6.      The individual Defendant is a resident of Pennsylvania with an address at 20 Beatty St, Wilkes Barre, PA 18705.

## FACTS

7.  Decedent passed away suddenly of a heart attack on December 14, 2015 shortly before his planned retirement from Defendant P & G.

8.  He passed without knowing or having an opportunity to reinstate his elections made through his online employee benefit account with P & G  which had been erased, along with other documentation, in the Company's change in plan administrators which took place in the Fall of 2015.

9.  The Estate had the following two employee investment accounts with P & G at the time of his death identified with Decedent's Employee Number 01091706 :

   a. The Proctor & Gamble Profit Sharing Trust & Employee Stock Ownership Plan; and

   b. The Proctor & Gamble Savings Plan.

Hereafter the foregoing referred to as the "Investment Plans."

10.     Almost immediately after his passing, Defendant P & G precipitously determined that the designated beneficiary to his investment plans was Defendant Losinger, a woman with whom he had parted acrimoniously over 27 years previously.

11.   Defendant P & G based this determination on a designation made in the  ancient 29-year old enrolment form the Deceased had made on becoming eligible for employee benefits.  See Enrolment Form at Exhibit "A."

12.     This determination belied that for the last fifteen years P & G employees have, encouraged by the Defendant, made their Plan elections online.

3

13.   This determination by P & G was in disregard of the Decedent established pattern of actively maintaining his employee benefit accounts and making changes to his employee benefit plans to account for changes in his life, which changes were made digitally through online accounts rather than in paper forms.

14.   At the time of this enrolment 29 years ago, the Decedent was in a relationship with Defendant Losinger, who he then described as "Co-habitator."  See Exhibit "A."

15.   Decedent broke up with Defendant Losinger, however, within two years after this enrolment on discovering she was, among other things, carrying on an affair with another man.

16.   Defendant Losinger married not long thereafter taking her husband's name, Losinger.

17.   To further injure the Decedent, in 1990, Defendant Losinger broke into his home and took much of its furnishings.

18.   Decedent retained no affection or commitment to Defendant Losinger but in fact had strong antipathy toward her.

19.   He had no basis or relationship with her to support any continuance of her as his designated beneficiary of his investment accounts and instead had strong reasons motivating him to prevent any possibility of her being rewarded.

20.   Decedent had other people in his life, including his family, whom he would much more readily wish to benefit.

21.   Decedent began a long term relationship in 1991 that lasted until 2014 at which time his girlfriend, Mary Lou Murray, a former employee of P & G, who left him but on amicable terms.

22.   During this relationship, Decedent was active in making account elections to ensure that Mary Lou and others were named as beneficiaries to other of his employee benefits and then changed those elections to reflect the changed status of his relationship.

4

23.  With respect to other of his non-probate assets, Decedent named members of his family including his mother.

24.  All of the extant documentation available to Plaintiff militates against any assertion that the 1987 Enrolment Form represented Decedent's actual, current elections in the terms of his investment plans.

25.  Decedent would have to have been comatose for 27 years for it to be plausible the 29- year old designation of Defendant Losinger represented his last election as to beneficiaries.

26.  Decedent had active motivation to act to ensure Defendant Losinger would not benefit by her perfidity to him and was demonstrably not negligent in insuring that his interests in his employee benefits should accord with his ties of affection with the people in his life.

27.  To the contrary, the documentation available to the Estate shows that Decedent regularly made changes to other of his employee benefits including:

  a. Providing for his girlfriend, Mary Lou Murray, to be covered under his health
       insurance;

  b. Naming Ms. Murray and his mother as beneficiaries on his employee life insurance
       only to remove them following the death of his mother and the ending of his
       relationship with Ms. Murray in June 2014.

28.  Decedent also had been actively engaged in opening a private investment account in anticipation of his retirement from P & G which was to take place shortly after his passing on December 14, 2015 and the transfer of Investment Accounts to it.

29.  Defendant P & G in defaulting to an ancient paper document irresponsibly acts in disregard of its longstanding encouragement of online account management by its employees.

30. Its employees for well over fifteen years have been predominantly managing their accounts

online through on password protected online accounts.

31. As demonstrated above, Decedent managed his employee benefits online.

32. In the Fall of 2015, Defendant P & G changed the administrator of its employee investment plans from JP Morgan Chase to Aon Hewitt.

33. In the course of this transfer, all of the paper files were purged and all online data embodying employee elections or current digital data files pertaining to P & G employees, at least for those working at the Mehoopany factory, were lost.

34. As a result, employee accounts with P & G did not reflect the actual terms elected by the employees which then formed the basis of the "contract" by which Defendant P & G was duty bound to uphold in the would exercise its fiduciary duties owed to them.

35. Employees of Defendant P & G began to realize that their Investment Accounts settings had been damaged and were also likely provided notice that they needed to review their accounts to ensure they reflected their personal elections.

36. Decedent, however, passed away suddenly before having notice that his online account designations as to his Investment Accounts were not current and before having the opportunity to update them.

37. Defendant P & G was well aware that its negligence and breach of fiduciary duty damaged its employee investment plan accounts and that there could be some liability to it arising from that damage to a subset of employees who, like Decedent passed before correcting the damage.

38. For this reason and others to be determined, Defendant P & G irresponsibly conducted only a cursory investigation and seized on the 1987 enrolment form as a pretense to resolve the Decedent's investment plan terms, intentionally disregarding the unlikely presentments counseling against that pretense arising from its age, his longstanding participation in the

6

Company and his management of his employee benefits.

39.  These presentments included recent changes by Decedent in his designation of life insurance beneficiaries which resulted in the proceeds being distributed to his heirs, his brothers, rather than by designation.

40.  The Estate, having learned of the data loss from other P & G employees, put Defendant P & G on notice that the 1987 designation of Defendant Losinger was invalid and contradictory to the circumstances of Decedent's active management of his affairs.  It also demanded complete documentation concerning the Investment Accounts which was not provided.

41.   Defendant P & G refused to provide the full documentation requested but instead only provided those documents which corresponded to its irresponsible and unjustified designation of Defendant Losinger.

42.  Defendant P & G's representative instead suggested that Plaintiff obtain a disclaimer from Defendant Losinger which would allow the investments to go to Decedent's Estate.

43.  Plaintiff, reluctant to bear or suffer the time and costs of litigation  pursued that course with Defendant Losinger through her attorney, Joseph Marriotti, Esquire.

44. Defendant Losinger through her attorney pretended to be desirous of an amicable resolution that would reflect her lack of any entitlement to benefit from Decedent, but strung Plaintiff's representative along proffering various pretenses requiring resolution.

45.  In reality, it is alleged that Defendant acted to mislead Plaintiff and act in tandem with Defendant P & G's representatives to precipitously provide that the investment funds would become available to Defendant Losinger after August 16 unless Plaintiff either obtained a disclaimer or restraining order. See August 2, 2016 letter at Exhibit "B."

## ERISA'S FIDUCIARY STANDARDS

7

46.   By the aforementioned allegations, Defendant P & G is a fiduciary of, <u>inter alia</u>, the Investment Plans

47.   The Employee Retirement Income Security Act of 1974, or ERISA,  imposes strict fiduciary duties of loyalty and prudence upon Defendant P & G as a fiduciary of its employees Investment Plans. The statute states, in relevant part, that, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a). The standard for the level of expertise to which fiduciaries are held is that of a prudent expert in financial matters.

48.  By the foregoing described conduct, Defendant P & G, as a fiduciary, failed to:

a. to discharge their duties with respect to the Plan solely in the interest of the

participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b. to discharge their duties with respect to the Plan solely in the interest of the

participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

8

49.  By its actions, Defendant P & G has failed to uphold its duty to honor Decedent's right and interests as reflected in his Plan choices which duty it also owes to his Estate.   Its violative actions include:

    a.  Its loss of the online account records of and elections made by Decedent pertaining to his interest in the Investment Plans;

    b.  Its irresponsible and precipitous holding up of a 29-year document as a valid basis for determination of Decedent's beneficiary designation to cover up its loss of data and any potential liability flowing therefrom for situations like those that pertain here;

    c.  its refusal to provide the Estate with full disclosure of Decedent's account information and documentation; and

    d.  by collusively acting with the wrongful designated beneficiary to foreclose the rights of the Estate so that it could close out the Investment Plan Accounts and limit liability.

**WHEREFORE,** Plaintiff prays the Court:

A.  Enjoin Defendant P & G from making any distribution of Decedent's Investment Plan accounts to Defendant Losinger;

B.  Determine the rights of the Estate to the Investment Plan accounts; and

C.  Determine liability in Defendant P & G for its derelictions of fiduciary duty as it relates to the Decedent and his Estate;

D.  Award such attorneys fees and costs as have been incurred by the Estate in this action, as allowed under ERISA.

**WITH RESPECT TO DEFENDANT LOSINGER**

9

50.  For the aforementioned reasons, Defendant Losinger has no entitlement to the Investment Plan accounts of the Deceased

**WHEREFORE,** Plaintiff prays the Court:

A. Enjoin Defendant Losinger from obtaining any distribution of or from the Investment Plan Accounts;

B. Determine the rights of the Estate to the Investment Plan accounts as they relate to Defendant Losinger;

C. Impose a constructive trust on Defendant Losinger in favor of the Estate given that she has no entitlement to any interest in the Investment Plan Accounts under law or equity.

51. Plaintiff also requests that it be determined that  ownership of the Investment Accounts belongs to it.

GOULD LAW ASSOCIATES, PC

Dated:   8/12/16

David F. Gould III, Esq.
Attorney I.D. No.  48046
Counsel to the Plaintiff
Gould Law Associates, PC
20 S Pine Street
Doylestown, PA 18901
215-345-8933
dfg3law@gmail.com

10

EXHIBIT A

*10.16*

PS-1 12/84

TYPE
NAME  *Rolison    Jeffrey         Lucas*
      LAST        FIRST           MIDDLE

*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*
SOCIAL SECURITY NUMBER

*6934*
PAYROLL NUMBER

*Mchoopany    947   Luvs*
PLANT, MILL, OFFICE OR DEPT.

## THE PROCTER & GAMBLE PROFIT SHARING DIVIDEND PLAN

### APPLICATION FOR PARTICIPATION

*April 27* , 19 *87*

I hereby apply for participation in The Procter & Gamble Profit Sharing Dividend Plan as indicated below and agree to be bound by all the terms and conditions thereof, including all amendments thereto adopted.

☑ Both Fund A and Fund B        ☐ Fund A only        ☐ Fund B only

I was born on *5-22-56* and have been continuously employed by the Company or a subsidiary since *5-19-86*.

I was previously employed by the Company or a subsidiary from _____ to _____.

I have received a copy of the Prospectus and the Annual Report.

APPROVED:

*John J. Beloski*
MANAGER

JUN  4 1987

Date effective _____ *5/25/87* _____

Signed *Jffry J. Rolison*
EMPLOYEE

MAY  4 1987

## DESIGNATION OF BENEFICIARY

In case of my death. I hereby designate as my beneficiary(ies) to whom payments shall be made as provided in the Plan:

(DO NOT USE PENCIL)

| Name | Relationship | Address | Proportion to Each |
|------|-------------|---------|-------------------|
| Margaret M. Slostedt | Cohabitor | Rd 2 Box 106 Dushore Pa | 100% |

I understand that the above designation(s) shall remain in effect until I give written notice of change to the Trustees of the Plan.

_Jeffry J. Graham_
EMPLOYEE'S FULL NAME

Date __4-27-87__   Marital Status ☑ Single   ☐ Married (See 2. below)

## INSTRUCTIONS

1. Many states have laws bearing on beneficiary designations. Participants may desire to consult their advisors before making a designation.
2. If you have designated a primary beneficiary other than your spouse (e.g., a Trust or children), you must have your spouse sign a notarized form consenting to the designation.
3. Write name of beneficiary in full. If a married woman, show her given, maiden and surname; thus, Mary Williamson Smith, not Mrs. John Smith.
4. Suggested Beneficiary Designations:

|   | Mary Williamson Smith | Wife | 1 Main Ave. Milwaukee, Wis. | 100% |
|---|----------------------|------|----------------------------|------|
| or | Mary Williamson Smith | Wife | " | 100% |
|   | If she survives me, otherwise |   |   |   |
|   | My children, per stirpes* |   |   | Equally |
| or | My Estate |   |   |   |
| or | Refer more complicated designations to Employee Services Dept., your Mgr., or Secretary of the plan for instructions. |   |   |   |

*This provides that if any of the children should predecease the participant or former participant, that child's share will go to his/her children.

## WAIVER OF THE PROFIT SHARING DIVIDEND PLAN

I, the undersigned, hereby certify that I have been given an opportunity to apply for Profit Sharing Dividend Plan participation and have decided not to take advantage of this offer.

| WITNESSED BY MGR. | (OVER) | SIGNATURE OF EMPLOYEE | DATE |
|-------------------|--------|----------------------|------|

EXHIBIT B

## VERIFICATION

I, Richard Rolison, am an Administrator of the  Plaintiff Estate in this action and I have reviewed the Complaint in this matter and verify that the allegations made therein either are true based on my personal knowledge or believed by me to be true based on information and documents obtained by the Estate.

_Richard Rolison_

Richard Rolison


Dated:  8/12/16